void, and that there could be no recovery under it, as it appeared to be an essential part of the agreement that the parties should thereafter separate and live apart. To the same effect is Whitney v. Whitney, 4 App. Div. 597, 36 N. Y. Supp. 891, 39 N. Y. Supp. 1136. In Clark v. Fosdick, 118 N. Y. 7, 22 N. E. 1111, 6 L. R. A. 132, 16 Am. St. Rep. 733, upon which the court below relied, the agreement had been made with a trustee, who on his part agreed to indemnify the husband against any charge, other than the agreed allowance for the support of his wife and children, and the action was brought by the trustee. In Effray v. Effray, 110 App. Div. 545, 97 N. Y. Supp. 286, a separation agreement was upheld where it appeared that when it was made the parties were already living apart, and an action for a legal separation had been begun. The contract did not, therefore, change the existing relations of the parties. It was expressly said, however, that if the parties had been living together when the agreement was made, and it had contemplated and provided for a future separation, it would have been invalid. In Reardon v. Woerner, 111 App. Div. 259, 97 N. Y. Supp. 747, wherein a separation was upheld, the parties had already separated when the agreement was made, and there was a trustee who undertook to indemnify the husband. The case of Clark v. Fosdick, supra, appears to be authority for the proposition that a valid separation agreement through the medium of a trustee may be made although the parties have not actually separated, if they immediately separate and live apart. Effray v. Effray, supra, is authority for the proposition that such an agreement may be validly made between a husband and wife without the intervention of a trustee, if the parties have actually separated and are living apart when the agreement is entered into. But we have been referred to no case of authority in which such an agreement without the intervention of a trustee has been upheld if the husband and wife are actually living together when the agreement is made, and it is a part of the agreement that they shall thereafter change the relative status, and live separate and apart. That is the case made by the present record.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

ERIE & J. R. CO. v. BROWN et al.

(Supreme Court, Special Term, Orange County. December 23, 1907.)

EMINENT DOMAIN—PROCEEDINGS—JUDGMENT—ENTRY—REFEREE'S REPORT.

Code Civ. Proc. § 3367, provides that in condemnation proceedings the court may order the same referred to a referee to hear and determine, on which trial the court or referee shall file a decision according to the provisions of the act as to decisions upon the trial of issues of fact by the court or referee. Section 3369 provides that judgment shall be entered pursuant to the direction of the court or referee in the decision filed. *Held*, that a referee, to whom a proceeding to condemn land was referred, had authority, on dismissing the petition, to direct judgment of dismissal, and that the clerk, on the filing of such order, properly entered judgment.

Condemnation proceedings by the Erie & Jersey Railroad Company against Walter H. Brown and others. A judgment for defendants was entered on a referee's report, whereupon defendants moved to vacate the same. Motion denied.

Bacon & Merritt, for plaintiff.
Geo. R. Brewster, for defendants.

TOMPKINS, J. The plaintiff made petition to this court at Special Term to acquire by condemnation lands owned by the defendants. An answer was interposed, and an order made appointing a referee to hear and determine the issues. The report of the referee finds that upon the petitioner's evidence the proceeding was prematurely brought, certain notices required by the statute not having been served, and directs judgment against the plaintiff, dismissing the petition, with costs; and the referee concludes his report as follows: "And I do order judgment to be entered accordingly." After the filing of the referee's report the clerk entered judgment in accordance therewith, and this motion is made by the defendants to vacate said judgment, on the ground that the clerk had no power to enter judgment on the report of the referee without direction by the court.

Section 3367 of the Code of Civil Procedure provides that in condemnation proceedings:

"The court shall try any issue raised by the petition and answer at such time and place as it may direct, or it may order the same to be referred to a referee to hear and determine, and upon such trial the court or referee shall file a decision in writing, or deliver the same to the attorney for the prevailing party, within twenty days after the final submission of the proofs and allegations of the parties, and the provisions of this act relating to the form and contents of decisions upon the trial of issues of fact by the court or a referee, and to making and filing exceptions thereto, * * * and to the powers of the court and referee upon such trial, shall be applicable to a trial and decision under this title."

It seems from this section to have been the intention of the Legislature to confer upon a referee appointed under the condemnation law the same power to hear and determine and direct judgment that a referee has who is appointed to hear and determine the issues in an action; and section 3369 provides that:

"Judgment shall be entered pursuant to the direction of the court or referee in the decision filed."

Here the referee made and filed his decision, in which he directs judgment against the plaintiff, dismissing the petition, with costs. The clerk, then, clearly had power, and it was his duty under the provision of section 3369, above quoted, to enter judgment in accordance therewith. While it is true that it was held in Potter v. Durfee, 44 Hun, 197, that no judgment should be entered in a special proceeding without the direction of the court, yet that was a proceeding by petition against an assignee for the benefit of creditors to have determined the petitioner's claim to certain property in the assignee's possession, and upon the report of the referee the clerk entered judgment in favor of the petitioner, and for costs against the assignee. The court, in vacating the judgment, held that the title to the property in question

could not be determined in a special proceeding instituted by petition, and that in any event the clerk could not enter a judgment which included costs without a direction by the court, for the reason that there was no statutory provision for costs, and that the question of costs was discretionary with the court. The condemnation law, however, does provide for costs, where the judgment is in defendant's favor, "at the same rates allowed, of course, to a defendant prevailing in an action in the Supreme Court," so that there is nothing left to the discretion of the court. The act of entering a judgment on the decision of the court or referee dismissing a petition in a condemnation proceeding is therefore purely ministerial.

It is urged in support of this motion that in a special proceeding no judgment can be entered by the clerk upon the report of a referee without some statute authorizing it. That is undoubtedly correct; but the provisions of the condemnation law already referred to, together with section 3382, seem to expressly provide that in condemnation proceedings the decision of the referee shall direct judgment to be entered in accordance therewith, and that the practice thereon shall conform to the ordinary practice in actions in the Supreme Court.

My conclusion is that the clerk was authorized to enter the judgment, and that this motion should be denied, with $10 costs.

---

### ERIE & J. R. CO. v. BROWN et al.

(Supreme Court, Special Term, Orange County. January 2, 1908.)

**1. CORPORATIONS—ACTIONS—INCORPORATION—ADMISSION.**

Where a railroad's petition to condemn land alleged plaintiff's due incorporation and the granting to it by the board of railroad commissioners of the certificate of public necessity and convenience required by Railroad Law, Laws 1892, p. 1395, c. 676, § 59, and the answer did not affirmatively allege that plaintiff was not a corporation, as required by Code Civ. Proc. § 1776, to put its corporate capacity in issue, the allegation of incorporation was admitted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2059.]

**2. RAILROADS—COMPANIES—INCORPORATION.**

Proof by a railroad company, petitioning to condemn land for its road. of the granting by the board of railroad commissioners of the certificate of public necessity and convenience required by Railroad Law, Laws 1892, p. 1395, c. 676, § 59, and the certificate itself, establish compliance by plaintiff with all the requirements of the statute relating to its incorporation and the granting of such certificate.

**3. EMINENT DOMAIN—CONDITIONS PRECEDENT TO CONDEMNATION—FILING MAP AND PROFILE.**

A railroad's map and profile showed just where the railroad crossed defendants' land which it proposed to condemn, and the center and side lines and the exact location of the road with reference to several buildings on the property and the public highway; and the profile showed stations marked thereon corresponding with the stations on the map, from which the height and width of the roadbed and the depth of the cuts across defendants' property could be ascertained. *Held*, that such map and profile constitute a sufficient compliance with the statute providing that, before constructing any part of its road or instituting con-